1

2

3

4

5            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
6

7  WILLIAM J. ALFANO,            )
                                 )  No. CV-07-239-CI
8          Plaintiff,            )
                                 )  ORDER GRANTING PLAINTIFF'S
9  v.                            )  MOTION FOR SUMMARY JUDGMENT
                                 )  AND DIRECTING AN IMMEDIATE
10 MICHAEL J. ASTRUE,            )  AWARD OF BENEFITS
   Commissioner of Social        )
11 Security,                     )
                                 )
12         Defendant.            )
   _____)

13      BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.

14 Rec. 9, 12).  Attorney Lora Lee Stover represents Plaintiff;

15 Assistant United States Attorney Frank A. Wilson and Special

16 Assistant United States Attorney Terrye E. Shea represent Defendant.

17 The parties have consented to proceed before a magistrate judge.

18 (Ct. Rec. 4.)  After reviewing the administrative record and briefs

19 filed by the parties, the court **GRANTS** Plaintiff's Motion for

20 Summary Judgment (Ct. Rec. 9) and directs an immediate award of

21 benefits.  Defendant's Motion for Summary Judgment (Ct. Rec. 12) is

22 **DENIED.**

23                          **JURISDICTION**

24      On August 22, 2003, Plaintiff William Alfano (Plaintiff) filed

25 an application for disability insurance benefits.[1]  (Tr. 80-82.)

26

27      [1]Plaintiff had previously filed an application for benefits in

28 2000, which the ALJ consolidated with the current application. (Tr.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 1

Plaintiff alleged disability due to coronary heart disease, neck injury, glaucoma, and clogged arteries in both legs, with an onset date of August 13, 1999. (Tr. 45, 49, 80.) Benefits were denied initially and on reconsideration. (Tr. 31-32.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on May 24, 2005. (Tr. 534-541.) The ALJ granted Plaintiff's request to continue the hearing so he could obtain counsel. At the hearing on August 9, 2005 (Tr. 544-602), Plaintiff, who was represented by counsel, testified, as did medical expert (ME) Robert A. Stier, M.D., and vocational expert (VE) Daniel R. McKinney. At the hearing, the ALJ stated provisionally that disability appears to be established at least for the period under the rules when the Plaintiff is of advanced age or 55 or older. (Tr. 598.) On the date last insured, Plaintiff was 54 years old. The ALJ denied benefits and the Appeals Council denied review. (Tr. 7-9, 17-28.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was 54 years old on his date last insured and 57 at the time of the hearing. He completed high school and one year of college. (Tr. 566.) He had past relevant work as a tavern owner and beverage system server. (Tr. 102, 144.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the

---

547.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 2

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423 (d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404. 1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii),

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 3

416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P, App. 1.   If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.   If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.   If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.   If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a prima facie case of entitlement to disability benefits.   *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.   The burden then shifts, at step five, to the Commissioner to show that: (1) Plaintiff can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.   *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 4

Commissioner's decision.  42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 5

1  still be set aside if the proper legal standards were not applied in
2  weighing the evidence and making the decision. *Brawner* v. *Secretary*
3  *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).
4  Thus, if there is substantial evidence to support the administrative
5  findings, or if there is conflicting evidence that will support a
6  finding of either disability or nondisability, the finding of the
7  Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229,
8  1230 (9th Cir. 1987).

9                          **ADMINISTRATIVE DECISION**

10      At the onset, ALJ Gaughen noted that Plaintiff met the
11  requirements of the Act and is insured for disability insurance
12  benefits through March 31, 2004. (Tr. 18.) At step one, the ALJ
13  found Plaintiff had not engaged in substantial gainful activity
14  during the relevant time. (Tr. 18.) At step two, he found
15  Plaintiff had severe impairments of cardiac impairments, status
16  post-placement of stent in right coronary artery and re-stenosis;
17  atherosclerotic coronary vascular disease, status post-angioplasty;
18  hypertension; hyperlipidemia; and type II diabetes (since April of
19  2003). (Tr. 22.) At step three, he determined these impairments
20  did not meet the requirements of any Listed impairments. (Tr. 22-
21  23.) He found Plaintiff less than completely credible. (Tr. 24,
22  27.) The ALJ found that Plaintiff has the RFC to stand and walk
23  half of a work day with standing for 2 hours at one time, walking
24  for 1 hour at a time, and sitting for 4 hours at a time. (Tr. 25.)
25  At step four, relying on the VE's testimony, the ALJ found that
26  Plaintiff is unable to perform his past relevant work. (Tr. 26.)
27  At step five, the ALJ found Plaintiff can perform other work,
28  including as a packaging and filling machine operator or assembly

worker.  (Tr. 26.)  The ALJ found Plaintiff was, therefore, not
under a "disability" as defined by the Social Security Act.  (Tr.
27-28.)

**ISSUES**

The question is whether the ALJ's decision is supported by
substantial evidence and free of legal error.  Plaintiff argues the
ALJ erred at step two by failing to find that his orthopedic
impairments are severe and by finding him less than completely
credible.  (Ct. Rec. 10 at 10-13.)  The Commissioner responds that
substantial evidence supports both of the ALJ's determinations and
there is no legal error. (Ct. Rec. 13 at 9-18.)

**DISCUSSION**

**A.    Step Two - chronic neck pain**

Plaintiff argues that the ALJ erred at step two by failing to
find his orthopedic impairments (chronic neck pain and, more
recently, lumbar pain) severe. (Ct. Rec. 10 at 3-7, 10-12.)

To satisfy step two's requirement of a severe impairment, the
Plaintiff must provide medical evidence consisting of signs,
symptoms, and laboratory findings; the claimant's own statement of
symptoms alone will not suffice.  20 C.F.R. § 416.908.  The effects
of all symptoms must be evaluated on the basis of a medically
determinable impairment which can be shown to be the cause of the
symptoms.  20. C.F.R. § 416.929.  The Commissioner has passed
regulations which guide dismissal of claims at step two.  Those
regulations state an impairment may be found to be not severe *only*
when evidence establishes a "slight abnormality" on an individual's
ability to work.  *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.
1988) (citing Social Security Ruling 85-28).  The ALJ must consider

the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

Evidence of Plaintiff's orthopedic impairments, specifically his neck pain, includes a cervical spine MRI on January 30, 2003, which was not available at the hearing. (Tr. 502.)  The ALJ received the MRI results after the hearing and briefly analyzed it, together with the cervical spine x-ray results: "The claimant was found by x-ray and MRI scan to have only mild to moderate cervical stenosis at C4-5, C5-6, and C6-7." (Tr. 24.)

The MRI results reveal:

C4-5: Annular bulge is present. Bilateral uncovertebral joint osteophytes are also present. No significant stenosis is present. Mild bilateral neural foraminal narrowing is seen.

C5-6: Posterior annular bulge is present along with bilateral uncovertebral joint disease. The combination causes mild canal stenosis and mild bilateral neural foraminal narrowing.

C6-7: A broad-based annular bulge is present with a slight right paracentral component. Uncovertebral joint osteophytes and facet joint degenerative changes present causing moderate right and mild left neural foraminal narrowing. There is mild canal stenosis.

(Tr. 502.) The cervical spine x-rays, also taken on January 30, 2003, reveal degenerative spondylosis and foraminal encroachment. (Tr. 504.)

Plaintiff testified that looking up or down causes neck pain. (Tr. 576.)  To relieve the pain, he takes 4 Aleve daily, does traction at home 20 minutes twice a day, and exercises his neck when

seated.  (Tr. 576-577.)  Two years of intermittent chiropractic care have not relieved Plaintiff's neck pain.  (Tr. 574-575.)  He is unable to completely turn his neck to the left.  (Tr. 575.) Plaintiff feels he might be able to hold his head in a downward looking position for most of the day, but the next day he probably would not be able to turn his head.  (Tr. 576.)

The ALJ erred by failing to include Plaintiff's orthopedic impairment (neck pain) as a severe impairment at step two.  The MRI and x-rays of his cervical spine indicated Plaintiff suffered from moderate right foraminal narrowing.  The ALJ mentions the finding but assesses no impairment as a result, noting only that because Plaintiff worked with complaints of chronic neck pain since 1994, it is not a severe impairment.  (Tr. 22.)  Plaintiff stopped working in November of 1999.

Objective testing reveals that the claimed impairment of chronic neck pain and limited mobility is clearly not groundless or frivolous, and likely worsened after 1994.  As chronic neck pain has more than a "de minimus" effect on Plaintiff's ability to work, the ALJ erred by failing to include it as a severe impairment at step two.

**B.    Step two - claudication**

The ALJ notes the ME's testimony that Plaintiff suffers from moderate impairment in his legs due to claudication but does not include it as a severe impairment as step two.  The ALJ gives no reason for rejecting the impairment and does not include it in the RFC.  An overview of Plaintiff's medical history reveals this is error: **(1) Initial heart surgery.**  On November 15, 1999 (two days

after onset), Plaintiff was admitted to the ER after experiencing indigestion for a week; testing revealed coronary artery disease. (Tr. 199.) He was released two days later after James Leggett, M.D., placed a stent in Plaintiff's right coronary artery. Plaintiff was discharged with five prescribed medications. (Tr. 199.) **(2) Medication-related gastritis.** On March 27, 2000, Dr. Leggett referred Plaintiff to Georgia Rees-Lui, M.D., for heartburn symptoms. (Tr. 239.) Testing on March 29, 2000, revealed gastritis probably related to taking aspirin. (Tr. 242.) **(3) Second heart surgery and additional diagnoses.** Plaintiff was admitted to the ER on March 30, 2000 (four months after onset), with a new onset of exertional pain and a positive stress test. (Tr. 246, 251.) On April 5, 2000, Dr. Leggett performed a complex angioplasty, rotablator and stenting of the right coronary artery, inserted a temporary pacemaker and performed an iliofemoral ungiography for consideration of percutaneous closure. (Tr. 264.) On June 5, 2000, Dr. Leggett's principal diagnosis was coronary atherosclerosis of native coronary vessel, with secondary diagnoses of unstable angina, unspecified hyperlipidemia, esophageal reflux, and essential hypertension. (Tr. 294.) **(4) Claudication.** Plaintiff first saw Michael Kwasman, M.D., on October 13, 2000. (Tr. 363.) He felt great except for a little pain when walking. (Tr. 363.) On October 8, 2001, Dr. Kwasman notes: "He does complain of some leg cramping with exercise as well as some fatigability which is unchanged for him." (Tr. 385.) Plaintiff was referred for an arterial leg scan due to claudication symptoms; tricor was stopped and zicor begun. (Tr. 385.) On October 17, 2001, Michael Hinnen, M.D., opined that test results show Plaintiff has mild to moderate disease of the left

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 10

internal iliac artery, moderate disease of the left internal iliac artery, mild calf vessel disease is present in the right leg, and there is a mild drop in Plaintiff's post-exercise ankle brachial indices. (Tr. 386.) **(5) Diabetes.** By January 4, 2003, Rolf Panke, D.O./C.A., noted Plaintiff's labs were abnormal and he was newly diagnosed with type II diabetes. (Tr. 439.) On April 15, 2003, Dr. Panke noted Plaintiff had side effects from all statins: Lipitor, Zocor, Lescol and Pravachol. (Tr. 440.) **(6) Third heart surgery.** Plaintiff was again admitted to the ER on June 24, 2003, for increased chest pain. (Tr. 373.) On that date, Lorne Golman, M.D., performed percutaneous transluminal coronary angioplasty and stenting of the proximal LAD, with a drug-eluting stent, kissing balloon inflation in the LAD and first diagonal branch, and percutaneous transluminal coronary angioplasty of the distal right coronary artery. (Tr. 378.) **(7) Medication.** In October of 2003, more than four years after onset but well before the date last insured, Dr. Panke notes Plaintiff is taking Pravachol, Plavix, Lopid and lisinopril. (Tr. 442.)

The ALJ notes medical expert Dr. Stier's opinion that Plaintiff "needs to rest for pain for about 5 minutes because of the claudication." (Tr. 22, referring to Tr. 556.) Dr. Stier opined:

> He has peripheral vascular disease which probably accounts for his claudication. I think it's legitimate to say that he has a moderate limitation of activity . . . . standing, walking, especially walking would be under six to eight hours. It was given as six to eight hours but I think it's gonna be less than that because he has significant disease in his legs. He needs to rest for pain or to sit down for five minutes at least. He said in one of his statements, I take sometimes a half an hour. Usually in people with claudication a short just even stopping will, will give relief.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 11

1  (Tr. 556.)

2      Despite the ME's opinion, the ALJ does not include claudication

3  as a severe impairment at step two.  The RFC includes no requirement

4  of 5 minutes of rest due to pain, and the ALJ gives no reason for

5  rejecting Dr. Stier's opinion.  This is error.

6  **C.   Credibility**

7      Plaintiff contends that the ALJ erred by finding him less than

8  completely credible and failing to support the finding with "clear

9  and convincing" reasons.  (Ct. Rec. 10 at 12-13.)  The Commissioner

10 responds that the ALJ's reasons may be drawn from inferences.  (Ct.

11 Rec. 13 at 17-18.)

12      "If the claimant produces evidence to meet the *Cotton*[2] test and

13 there is no evidence of malingering, the ALJ can reject the

14 claimant's testimony about the severity of [his] symptoms only by

15 offering clear and convincing reasons for doing so."  *Smolen v.*

16 *Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  "[A]n ALJ may not reject

17 a claimant's subjective complaints based solely on a lack of medical

18 evidence to fully corroborate the alleged severity of pain."  *Burch*

19 *v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

20      There is no evidence of malingering.  Plaintiff is correct that

21 the ALJ did not offer specific, clear, and convincing reasons for

22 rejecting Plaintiff's testimony with respect to neck pain and its

23 resulting limitations.  The inferences from the evidence are more

24 consistent with finding Plaintiff credible than not credible.

25 **D.   Remand**

26      "When an ALJ's reasons for rejecting the claimant's testimony

27 _____

28      [2]*Cotton v. Bowen,* 799 F.2d 1403 (9th Cir. 1986).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 12

are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted).  The VE testified that it would be very difficult for a person who does not have neck flexion more than a third of the day to perform any work.  (Tr. 595-597.) Plaintiff indicated neck flexion increases his pain and limits mobility.  (Tr. 575-77.)  The ME testified that Plaintiff has significant disease in his legs.  Objective test results confirm that Plaintiff suffers from moderate cervical stenosis, degenerative spondylosis, foraminal encroachment, and claudication, in addition to the impairments the ALJ found severe: cardiac impairments resulting in the placement and replacement of a right coronary artery stent; atherosclerotic coronary vascular disease, status post-angioplasty; hypertension; hyperlipidemia; and type II diabetes, impairments which can be expected to produce disabling symptoms. (Plaintiff's rotator cuff tear and later repair, as well as removal of a colon tumor, occurred after his date last insured and are not included.)   It is clear from the record as a whole, including the testimony of the ME and the VE, that Plaintiff does not have the RFC to perform work at any level.

### CONCLUSION

The ALJ's step two finding and credibility assessment are based on legal error and not supported by substantial evidence. Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING AN IMMEDIATE AWARD OF BENEFITS - 13

1  **GRANTED.**    This  matter  is  remanded  to  the  Commissioner  for  an

2  immediate  award  of  benefits.

3        2.    Defendant's  Motion  for  Summary  Judgment  **(Ct. Rec. 12)**  is

4  **DENIED.**

5        3.    An  application  for  attorney  fees  may  be  filed  by  separate

6  motion.

7        The  District  Court  Executive  is  directed  to  file  this  Order  and

8  provide  a  copy  to  counsel  for  Plaintiff  and  Defendant.  Judgment

9  shall  be  entered  for  Plaintiff  and  the  file  shall  be  **CLOSED.**

10       DATED  March  31,  2008.

11

12                    ___S/ CYNTHIA IMBROGNO___
                      UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28